## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### Indianapolis Division

SENTINEL INSURANCE COMPANY, LTD.,

               Plaintiff,

v.

DURHAM ENGINEERING, INC.,

               Defendant.

Civil Action No.: 1:18-cv-16

## SENTINEL INSURANCE COMPANY, LTD.'S
## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel"), by and through its undersigned counsel, hereby seeks declaratory judgment and other relief against Durham Engineering, Inc. ("Durham"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage action seeking declaratory relief under Title 28, Sections 2201 and 2202 of the United States Code and Rule 57 of the Federal Rules of Civil Procedure. Sentinel seeks a determination of the parties' rights and obligations under an insurance policy Sentinel issued to Durham with respect to a lawsuit entitled *Buck v. Indiana Department of Transportation, et al.,* Cause No. 79D01-1612-CT-000196 (the "*Buck* Lawsuit"), which is pending in the Superior Court for Tippecanoe County, Indiana.

### PARTIES, VENUE, AND JURISDICTION

2.      Jurisdiction in this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

3.      Plaintiff Sentinel Insurance Company, Ltd. is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

4.      On information and belief, Defendant Durham Engineering, Inc. is an Indiana corporation with its principal place of business in Anderson, Indiana.

5.      The damages sought by the plaintiffs in the *Buck* Lawsuit exceed $75,000.

6.      Diversity jurisdiction exists because (a) there is complete diversity of citizenship between Sentinel and Durham; and (b) the amount in controversy, including the potential costs of both defending and indemnifying Durham in the *Buck* Lawsuit, exceeds $75,000.

7.      This Court has personal jurisdiction over Durham pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), as Durham transacts business in this District.

8.      Venue is appropriate under 28 U.S.C. § 1391 because Durham maintains its principal place of business is in this District and is subject to personal jurisdiction in this District.

## THE *BUCK* LAWSUIT

9.      On or around December 19, 2016, the *Buck* Lawsuit was filed in the Superior Court for Tippecanoe County, Indiana.  On or around February 7, 2017, plaintiff Paul Buck filed a Third Amended Complaint in the *Buck* Lawsuit, which named Durham as a defendant, among others.  A copy of the Third Amended Complaint from the *Buck* Lawsuit is attached hereto as Exhibit A.

10.     The *Buck* Lawsuit alleges that Durham, among other companies, entered into consulting contracts, subconsulting contracts, or other agreements to perform planning, design, supervisory, inspection, quality control, and/or engineering activities in connection with the construction and reconstruction of Interstate 65 ("I-65") in Tippecanoe County, Indiana.

11.     The *Buck* Lawsuit alleges that on July 23, 2015, Jill Buck was driving southbound on I-65 with her sons, B.B. and A.B., as passengers, and that she brought her vehicle to a stop behind traffic near mile marker 177.4 in West Lafayette, Tippecanoe County, Indiana.

12.     The *Buck* Lawsuit alleges that a tractor trailer driven by Ruslan Pankiv was unable to stop in time and struck Jill Buck's vehicle from behind, forcing it to collide with a third party's vehicle.  Ruslan Pankiv's vehicle allegedly caught fire, and the fire spread to Jill Buck's vehicle.  The *Buck* Lawsuit alleges that Jill Buck, B.B., and A.B. died as a result of the impact with Ruslan Pankiv's tractor trailer and the subsequent fire.

13.     Count VI (¶¶ 107-117) of the *Buck* Lawsuit alleges that Durham owed a duty of care to those traveling on public roads, including Jill Buck, A.B., and B.B., "to exercise reasonable care in the selection, supervision, inspection, retention, and oversight of those persons or entities which [it] selected to repair, maintain, construct and/or reconstruct streets, highways and roadways in the State of Indiana."  The *Buck* Lawsuit further alleges that Durham "owed a duty to the traveling public to conduct the planning, design, maintenance, construction, reconstruction and repair activities in a safe and reasonable manner and to control the flow of traffic in and around the construction zones in a safe and reasonable manner."

14.     The *Buck* Lawsuit alleges that Durham "carelessly and negligently breached the duties it owed to the traveling public" by, among other things:

    a.  Negligently selecting, supervising, inspecting, retaining, and overseeing consultants/subconsultants/subcontractors;

    b.  Failing to keep and maintain the construction zone and alterations to I-65 in a reasonably safe condition;

    c.  Failing to keep and maintain proper lines of sight and appropriate visibility for drivers traveling through the construction zone;

3

    d.  Failing to follow requirements and specifications for the use and removal of construction warning and informational signs so that construction activities would not create or pose a danger to drivers;

    e.  Failing to follow the requirements and specifications regarding monitoring and controlling the flow of traffic in and around the construction zone; and

    f.  Failing to design, create, implement, modify, adjust and develop the requirements and specifications for use and removal of construction warning and informational signs, as well as the movement and maintenance of traffic in a reasonably safe manner so that construction activities would not pose a danger to drivers and members of the public.

15.    Based on the above allegations, Paul Buck, individually and as Administrator of the Estate of Jill Buck, and as parent and guardian of B.B. and A.B., asserts claims against Durham for lost future income and support, loss of consortium, medical, funeral, and burial expenses, and expenses for the administration of the Estate of Jill Buck.

## THE SENTINEL POLICY

16.    Sentinel issued Policy No. 36 SBA AI2450 to Durham for a policy period from April 20, 2015 to May 15, 2016 (the "Sentinel Policy"). A full and complete copy of the Sentinel Policy is attached hereto as Exhibit B.

17.    The Sentinel Policy provides primary business liability coverage with a limit of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate, where applicable. The Business Liability Coverage Form (Form SS 00 08 04 05) provides that, subject to the policy's terms, conditions, definitions and exclusions, Sentinel will pay those sums that Durham becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal

and advertising injury" to which the insurance applies, and that Sentinel will "have the right and duty to defend the insured against any 'suit' seeking those damages." The insurance applies to "bodily injury" and "property damage" caused by an "occurrence" in the "coverage territory" during the policy period, and to "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

18.     "Bodily Injury" is defined in the Sentinel Policy as physical injury, sickness, or disease sustained by a person, including, "if arising out of the above, mental anguish or death at any time."

19.     "Property damage" is defined in the Sentinel Policy as:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

20.     "Occurrence" is defined in the Sentinel Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

21.     "Personal and advertising injury" is defined in the Sentinel Policy as injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;
b.     Malicious prosecution;
c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;
d.     Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.**   Oral, written or electronic publication of material that violates a person's right of privacy;

   **f.**   Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

   **g.**   Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

   **h.**   Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

22.   The Policy contains the following exclusionary language under "B.

EXCLUSIONS" of Form SS 00 08 04 05:

   **1.**   **Applicable To Business Liability Coverage**

   This insurance does not apply to:

   \*        \*        \*

   **j.**   **Professional Services**

   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

   \*        \*        \*

      **(2)**   Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

      **(3)**   Supervisory, inspection, architectural or engineering activities[.]

23.   The language in the Business Liability Coverage Form is modified by

endorsement as set forth in "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS

PROFESSIONAL LIABILITY" (Form SS 05 06 03 14):

   This endorsement modifies insurance provided under the following:

   **BUSINESS LIABILITY COVERAGE FORM**

   The following is added to Paragraph **1., Applicable to Business Liability Coverage** (Section **B. —** EXCLUSIONS):

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by:

> **a.** Any insured; or

> **b.** Any engineering, architectural or surveying firm that is performing work on your behalf in such capacity.

**2.**     Professional services includes but is not limited to:

> **a.**     The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, recommendations, reports, surveys, field orders, change orders, designs or drawings and specifications; and

> **b**.     Supervisory, inspection, quality control, architectural or engineering activities.

**3.**     This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury", "property damage" or "personal and advertising injury", involved the rendering of or failure to render any professional services by that insured.

24.     The Sentinel Policy also provides umbrella liability coverage with a limit of liability of $10,000,000 per occurrence and in the aggregate, where applicable.  The "Umbrella Liability Provisions" (Form SX 80 02 04 05) state that, subject to the policy's terms, conditions, definitions and exclusions, Sentinel will pay those sums that Durham becomes obligated to pay as damages in excess of the underlying insurance because of "bodily injury," "property damage," or "personal and advertising injury" which occurs during the policy period.

25.     The Umbrella Liability Provisions are modified by endorsement as set forth in the "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" (Form SX 21 13 03 14), which states:

This endorsement modifies insurance provided under the following:

## UMBRELLA LIABILITY PROVISIONS

**1.** The following exclusion is added to B., Exclusions (SECTION I — COVERAGES):

This policy does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by:

> **a.** Any "insured"; or
>
> **b.** Any engineering, architectural or surveying firm that is performing work on your behalf in such capacity.

**2.** Professional services includes but is not limited to:

> **a.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, recommendations, reports, surveys, field orders, change orders, designs or drawings and specifications; and
>
> **b.** Supervisory, inspection, quality control, architectural or engineering activities.

**3.** This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury", "property damage" or "personal and advertising injury", involved the rendering of or failure to render any professional services by that insured.

## COUNT I:  DECLARATORY RELIEF

26.     Sentinel repeats and realleges the allegations of paragraphs 1 to 25 as if set forth fully herein.

27.     An actual controversy exists between Sentinel, on the one hand, and Durham, on the other hand, regarding whether Sentinel has a duty to defend and/or indemnify Durham in the *Buck* Lawsuit.  By the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

28.     All of the allegations against Durham in the *Buck* Lawsuit arise from the rendering or failure to render professional services in connection with the construction and reconstruction of I-65 in Tippecanoe County, Indiana, including:  preparing or approving maps, shop drawings, opinions, recommendations, reports, surveys, field orders, change orders, designs or drawings and specifications; and/or supervisory, inspection, quality control, architectural, or engineering activities.

29.     Such operations and activities by Durham involve the use of specialized training, skill, experience, and/or knowledge, and Durham's alleged liability arises out of the special risks inherent in the profession of civil engineering, surveying, and planning.

30.     The professional services exclusion in the primary general liability coverage part of the Sentinel Policy, as set forth in Exclusion B.1.j(2)-(3) and as modified by Form SS 05 06 03 14, applies to all of the allegations against Durham in the *Buck* Lawsuit.

31.     The professional services exclusion in the umbrella liability coverage part of the Sentinel Policy, as set forth in the endorsement entitled "EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY" (Form SX 21 13 03 14), applies to all of the allegations against Durham in the *Buck* Lawsuit.

32.     Sentinel has no duty to defend or indemnify Durham in connection with the *Buck* Lawsuit.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sentinel Insurance Company, Ltd. requests entry of a declaratory judgment finding and declaring:

a.   That Sentinel Insurance Company, Ltd. has no duty to defend Durham in the *Buck* Lawsuit;

b.  That Sentinel Insurance Company, Ltd. has no duty to indemnify Durham in the *Buck* Lawsuit;

c.  That the Court award Sentinel Insurance Company, Ltd. its attorney fees and costs; and

d.  That Sentinel Insurance Company, Ltd. is entitled to such further relief as may be necessary and proper.


Dated: December 21, 2017

Charles J. Maiers, #31408-49
DUE DOYLE FANNING & ALDERFER, LLP
8440 Allison Pointe Blvd., Suite 350
Indianapolis, IN 46250
(317) 635-7700

*Of counsel (pro hac vice to be filed):*

James P. Ruggeri, DC Bar No. 431034
Joshua P. Mayer, DC Bar No. 1003160
SHIPMAN & GOODWIN LLP
1875 K Street NW, Suite 600
Washington, DC  20006
Tel:  202-469-7750
Fax:  202-469-7751
jruggeri@goodwin.com
jmayer@goodwin.com

*Counsel for Plaintiff Sentinel Insurance Company, Ltd.*